## MORGAN et al. v. COWETA FERTILIZER COMPANY.

1. Where a purchaser of fertilizers desires to have samples thereof taken and deposited with the ordinary under section 1571 of the Political Code, and the seller requests the purchaser to take the fertilizers home, promising shortly thereafter to visit him and take the samples, and within a few days he does go to the home of the purchaser and take the samples and, in company with the purchaser, deposits such samples with the ordinary, he is thereafter estopped to claim that the samples were not taken at the time of sale or delivery.

2. When, in accordance with section 1571, the seller himself takes the samples, he is likewise estopped to claim that they were not properly taken.

3. The notice required by section 1574 is that the purchaser has reason to believe from the yields of the crop that the fertilizer was totally or partially worthless. At what time of the year or stage in the growth of the crop the purchaser can properly determine the effect of the fertilizer upon the crop so as to give notice of such dissatisfaction is a question for the jury.

Argued April 27, — Decided May 12, 1900.

Complaint.  Before Judge Janes.  Polk superior court. August term, 1899.

*Fielder & Mundy,* for plaintiffs in error.

*Sanders & Davis,* contra.

SIMMONS, C. J.   The record discloses that Morgan and several others purchased from Randall, the agent of the Coweta Fertilizer Company, a quantity of guano.   The purchasers wished to have samples taken and preserved as provided by section 1571 et seq. of the Political Code.   The agent told them he was busy, and requested them to take the guano to their homes,. where he promised to call in a day or two and take the samples. Within two or three days he did go to the home of each, and took samples from the sacks.   He and the purchasers then went. to the ordinary of the county, and deposited with him the samples in bottles.   They were duly labeled according to the statute, and were retained by the ordinary.   Early in September of the same year, the purchasers, being dissatisfied with the yield of the crop on which the fertilizers had been used, requested the ordinary to send the samples by express to the State chemist for· analysis.   The State chemist analyzed the samples and sent to the ordinary a copy of the analysis, properly certified.   About the first of September, and also in October and November, the purchasers notified the agent of the fertilizer company that the fertilizers had not produced the results expected, and that they intended to forward the samples to the State chemist for analysis.   The note given for the fertilizers became due, the makers refused to pay it, and suit was brought by the company.   The· defendants filed pleas setting up the above facts, and in addition thereto alleging that the official analysis showed that the fertilizers did not come up to the guaranteed analysis.   On the trial of the case the official analysis was tendered in evidence, and was, upon objection, excluded by· the court.   Oral evidence was introduced as to the effect of the fertilizers upon the crops, but, inasmuch as the judge directed a verdict for the plaintiff, it is not necessary to state it here.

1. One of the objections made to the introduction of the· official analysis was, that the samples had not been taken at the time of sale or delivery as required by the statute.   A reference to the above-stated facts will show that the purchasers,.

when the fertilizers were about to be delivered to them, re-quested the agent of the company to take the samples then. He was too busy to do so, and requested the purchasers to take the fertilizers home, promising to call in a few days to take the samples. In two or three days he called, took the samples, and, in company with the purchasers, deposited them with the ordinary. Under these circumstances we think the company was estopped to raise this objection to the evidence offered. The delay was for the convenience of the plaintiff's agent and at his request, and it would be wrong to allow the plaintiff to take advantage of the purchasers because they did not insist that its agent should pursue the law strictly.

2. Another objection made to the introduction of the analysis of the State chemist was, that the samples had not been prop-erly taken. The evidence on this point was, that the agent, after the bags of fertilizer had been opened, used in one case a knife and in the other a spoon to take the samples from the bags. He placed the samples in bottles, sealed the bottles, and delivered them to the ordinary. The objection raised was, that the samples came from the top and not from deeper down in the sacks. The law does not prescribe how or in what manner the seller shall take samples. It seems to us that if he took the samples, knowing the object for which they were wanted, with-out getting any of the fertilizers from the middle of the sacks, and was satisfied with this method of taking them, he can not be afterward heard to object to the analysis on the ground that the samples were not properly taken from the sacks. To de-cide otherwise would be to allow a seller to take advantage of his own wrong.

3. Section 1574 of the Political Code provides that, "should said purchaser, after having used such fertilizers upon his crops, have reason to believe from the yields thereof that said fertilizer was totally or partially worthless, he shall notify the seller, and apply to the ordinary to forward the said samples . . to the State chemist," etc. One of the objections raised to the admission in evidence of the analysis was, that the defendants could not tell in September what would be the yields of their

crops of cotton, and that, therefore, the notice was given too early; that at the time it was given they were not able to tell what would be the yield, and an analysis made after so early a notice was not authorized and was therefore inadmissible in evidence. It will be observed that the statute does not say at what time the notice must be given. It only says that if the purchaser has reason to believe from the yields of the crops that the fertilizer was totally or partially worthless, he shall give the seller this notice of dissatisfaction. Inasmuch as the statute does not further prescribe the time when the notice can be given, we think it a question for the jury. It is for the jury to say when a purchaser of fertilizer may reasonably say from the yields of the crop that the fertilizer was totally or partially worthless. Whether, in regard to a cotton crop, he can do this in September or in October, we are unable as matter of law to determine. As a matter of opinion, we would be inclined to say that a man whose business it was to raise cotton and to buy fertilizers for it could make at least a reasonable estimate as to the effect of the fertilizer upon his crop. Certainly this would be true in some sections of the country, and would possibly not be true in others. All this would be for the determination of the jury. We think that, under this statute, it is not necessary that the crop should have been gathered, ginned, and baled before the yield could be determined so as to give the notice to the seller of the fertilizer. The statute does not require that the notice should be given at any particular time, and, this court being unable to determine as matter of law when it should be given, it devolves upon the jury to determine whether the notice was given properly and in due time or was given too early.

Inasmuch as it appears that there were no other objections to the admission in evidence of the official analysis and that the same was in other respects regular, and inasmuch as that analysis differed from the guaranteed analysis under which the fertilizers were sold, the judge erred in excluding the evidence offered, and in directing a verdict for the plaintiff.

*Judgment reversed. All concurring, except Fish, J., absent.*